IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

VAN DO,

        Plaintiff,        No C 04-2872 VRW

    v

                               ORDER

JO ANNE B BARNHART, Commissioner of Social Security,

        Defendant.

_____/

       Plaintiff Van Do appeals from the decision of the Social Security Administration (SSA) denying her application for social security income (SSI) under title XVI of the Social Security Act (Act). The court has jurisdiction over the appeal pursuant to 42 USC § 405(g). The court now considers cross-motions for summary judgment. For the reasons stated herein, the court DENIES plaintiff's motion and GRANTS defendant's motion.

\\

\\

I

Plaintiff was born in around 1974 in Vietnam. She attended school through the fifth grade in Vietnam, immigrated to the United States as a teenager and has never worked. Administrative record (AR), Doc # 16 at 55, 271. She is a naturalized United States citizen. AR 40, 270. Plaintiff contended in connection with her application for benefits that she did not speak English. AR 54. Up to and including the time period in which her application for benefits was pending, plaintiff was unmarried and lived in Oakland with her three children, the youngest of whom was born in October 2000. AR 114-16. The record contains scant evidence regarding the children's paternity, except that they are "from three different fathers" (AR 248) and no reference to the father(s) playing any financial or participatory role in plaintiff's life or that of her children. Her sole source of income was AFDC/CALWORKS benefits. AR 41, 45, 269. According to her testimony, plaintiff took and passed the exam to perform manicures and completed one month of the on-the-job training (AR 276-77), but did not seek a job afterward because of a sinus infection (AR 271), planned sinus surgery (AR 278) and because "they don't let [people who have psoriasis] do the manicure." AR 279.

On May 28, 2002, plaintiff applied for SSI benefits alleging an onset date of January 1, 1997. AR 40, 44. Her application listed "depression, anxiety skin disease, back pain, migraine headaches, asthma, inability to smell" as limiting her ability to work because "I have a hard time concentrating, difficulty sleeping, and back pain and headaches which limit my

ability to complete tasks." AR 55. The application stated "I do not need help in personal care, hygiene or upkeep of a home." AR 45. In her daily activities questionnaire, plaintiff stated that she sleeps and watches television a lot, and that her brother takes her out to shop for food almost every day, carries the groceries and handles the money transactions and "sometimes" comes to her apartment to help cook. AR 68-73. The questionnaire contains several references to pain and headaches, but also states that plaintiff takes painkillers less than once a day, AR 68, and that upon receiving a referral from her primary care doctor to "a specialist for my headaches," "I called once to make an appointment but they were full, so I gave up." AR 72.

Plaintiff underwent an agency-ordered internal medicine evaluation with Lloyd Johnson, MD of QTC Medical Group in Oakland. A September 10, 2002 report from that evaluation relates that plaintiff appeared with a professional translator. Dr Johnson's report noted plaintiff's history of asthma, "which appears to be well-controlled with albuterol dose inhaler," history of headaches, which "sound like migraine[s]," and mild memory loss, "which appears to be non-pathological." AR 130. He also stated that plaintiff had complained of high blood pressure, but had normal blood pressure on examination. Id. Of plaintiff's complaints of back pain, Dr Johnson noted "slight subjective evidence" on exam. Id. He also observed "plaque-type lesions, which are probably psoriatic." Id.

Dr Johnson concluded that "patient's primary physical function limitations relate to her asthma. She should not be employed in a capacity where she is exposed to dusts, noxious

3

chemicals, pollens, animal danders or rapid changes in temperatures. Patient has no other functional limitations except those appropriate to her age and body habitus." Id.

The administrative record also contains an abundance of records from plaintiff's treating physicians, especially primary care physician Thanh K Bui, MD and dermatologist Ervin Epstein, MD. Dr Bui's records (AR 147-219 and 257-61) reflect that plaintiff visited him approximately fifteen times in 1995, twenty-one times in 1996, twenty-two times in 1997, twenty-one times in 1998, fourteen times in 1999, seventeen times in 2000, twelve times in 2001, thirteen times in 2002 and eight times before the record closed in 2003. The progress notes contain regular, repeated references to sinusitis, allergic rhinitis, headaches and asthma, but only occasional, discontinuous references to back strain (e g AR 183 dated August 24, 1998; AR 156 dated September 29, 2001). For her psoriasis, Dr Bui referred plaintiff to Dr Epstein, whom she saw numerous times for psoriasis treatments beginning in 1997. AR 133-45; 254-56. In a letter dated January 2003, Dr Epstein stated that while plaintiff's lesions were "usually quite extensive," they were not disabling per se for most jobs. AR 16, 221.

The record also includes documentation of plaintiff's 1997 sinus surgery. AR 102A-107.

Because her disability application included a claim of depression, plaintiff underwent an agency-ordered psychological exam at the QTC Medical Group with Carol L Lewis-Wintrode, PhD. Her September 10, 2003 report from the exam noted that plaintiff's grooming and hygiene was "consistent with a good level of self-care

4

skills and personal hygiene competence," that she "understands the US currency, and can handle money, shop, and make change [and] care for her personal affairs."  AR 122.  Dr Lewis-Wintrode found plaintiff "oriented in all dimensions" and that while she "appeared to have a short attention span and limited concentration * * * [she] was able to focus on the tasks and complete the tasks" and could "follow instructions without difficulty or repetition."  Id. The report described plaintiff's insight and judgment as "intact," her fund of knowledge as "intact," her speech was "clear" and her thoughts "relevant and productive," and immediate memory (of numbers and the like) "intact."  AR 123.  Plaintiff's IQ tested at 68, a level described as "high mildly deficient," but the examiner stated that plaintiff "functions in the borderline range" noting that "she is able to care for her three children and appears to have adequate adaptive skills [and can] handle finances."  AR 123-24.  She found "no evidence of psychomotor retardation."  Id.  Dr Lewis-Wintrode diagnosed plaintiff with "mild to low borderline intellectual functioning and depression, not otherwise specified with a Global Assessment of Functioning (GAF) of 60.  Id.  She found plaintiff able to avoid simple hazards, interact adequately with others, follow one- and two-part instructions and handle simple tasks.  AR 125.

An agency-prepared mental RFC worksheet prepared on October 7, 2002 by TM Gragg, MD found plaintiff "not significantly limited" in eighteen of twenty work-related abilities, and "moderately limited" only in "ability to understand and remember detailed instructions" and "ability to carry out detailed instructions." AR 239-41.

5

In November of 2002, plaintiff's primary care physician referred her to Tuong Vi Ta, MD because of "poor sleep, headache, low energy level." AR 248. Dr Ta's records reflect visits or other contact on November 20 and December 17, 2002 and on March 4, April 7, May 5 and June [illegible], 2003. AR 253-56. A barely legible, worksheet-style report from March 10, 2003 noted "pyschomotor retardation" and "depression," "slow" thought processes and "significant impairment in [several areas] of life functioning": symptom management, [illegible] functioning and parenting skills. Id at 248-53. The report appears to contain a diagnosis of "depressive disorder" with a GAF of 50. AR 249.

Plaintiff's application for benefits was denied initially and upon reconsideration. AR 14. She submitted a timely request for a hearing before an Administrative Law Judge (ALJ).

On October 30, 2003, The ALJ opened the hearing with plaintiff, her attorney and an interpreter present. AR 265-87. Plaintiff testified that "at one time" she had been able to speak a little English but could no longer do so although she had taken some ESL classes. AR 270. She testified that she could read and write in Vietnamese. AR 271. In answer to the question "do you know how to add numbers and figure the right change on money?" she testified that she could "before" but could no longer remember how to do so. Id.

After asking about plaintiff's sole, brief occupational training as a manicurist, the ALJ asked why plaintiff thought she could not work, to which plaintiff answered "Of course I have psoriasis * * * and when I went to work all the other employees look at me as though I'm – was ashamed, and I'm scared too." AR

272. She also stated that asthma prevented her from working at "heavy-duty job[s]" and that her headaches required her to take one-hour breaks. Id. The ALJ asked plaintiff to approach and show him the psoriasis on her hands and arms. AR 273. Plaintiff further testified that she gave up ESL classes because fellow students made comments about her psoriasis. AR 276. Plaintiff's attorney questioned her about her treatments for psoriasis as well as her headaches and back pain. At the end of the hearing, the attorney asked why plaintiff had not looked for a job, to which plaintiff answered "they wouldn't hire me with the kind of sickness that I have." AR 286. The attorney then asked "what about right now? You can't really see her sickness. I mean I can't see it on her face or her hands." Id. Plaintiff answered, " Because I don't speak English." Id. When asked whether she'd considered taking English classes again, plaintiff replied that she wanted to, but was waiting for her condition to improve. AR 287.

On November 28, 2003, the ALJ issued a decision finding plaintiff not disabled because she had no impairment or combination of impairments precluding the performance of work existing in significant numbers in the national economy. AR 14-19. Applying the five-step sequential disability analysis set forth at 20 CFR § 416.920 (infra), the ALJ found that plaintiff had engaged in no substantial gainful activity since the date of her application for benefits (step one). AR 15. He found that plaintiff suffered from medically determinable impairments —— depression, psoriasis, asthma, allergic rhinitis and migraine headaches —— that, in combination, significantly limited her ability to perform basis work activities and were therefore "severe" (step two). Id.

The ALJ next found, at step three, that none of plaintiff's impairments met or equaled the criteria set forth in the Listing of Impairments at 20 CFR Part 404, Subpart P, Appendix 1, which includes asthma, psoriasis or depression. Regarding depression, found that: plaintiff could care for her three children, do chores, shop and cook and therefore suffered only a "mild" restriction in activities of daily living; that according to the consulting psychologist plaintiff had no significant difficulty relating to others nor significant deficits in concentration, and therefore suffered only "mild" difficulties in social functioning and concentration, persistence and pace; and the record contained no evidence of episodes of decompensation. AR 15-16. Based on those findings, the ALJ concluded that plaintiff did not suffer from "Listing level depression." Id.

Noting plaintiff's lack of employment history, the ALJ dispensed with step four and moved to step five –– consideration of plaintiff's residual functional capacity (RFC) for employment. The ALJ concluded that even with the limitations of avoiding both harsh environmental irritants and extensive interaction with the public, plaintiff was able to perform a wide range of unskilled work –– i e, work dealing with objects, rather than data or people –– available in significant numbers in the national economy. AR 17-18.

In reaching this conclusion, the ALJ discounted the March 2003 report by treating physician Dr Ta on the grounds that it was inconsistent with his own November 2002 report and was not supported by medically acceptable diagnostic techniques and that Dr Ta was not a mental health professional. AR 17. The ALJ also discounted plaintiff's own testimony, finding it not "particularly

8

convincing or credible." Id.  In specific, the ALJ set forth the following observations:

> I note that the claimant has reported that she has been able to, and continues to be able to, raise three children on her own and she has reported that she has also been able to do chores, shop and cook. [ ] In addition, at the hearing the claimant appeared well-groomed and interacted with me without difficulty - a presentation that is inconsistent with an alleged degree of discomfort with her appearance that she is unable to function adequately outside of her home.  I also note that despite her allegedly disabling depression and headaches, the frequency of her visits to her doctors over the years for treatment of her allergic rhinitis and psoriasis suggests that the claimant has been quite adept and sophisticated in accessing regular, ongoing medical care.  I also note that while the claimant stated that she was unable to speak any English, she takes ESL courses and has become a citizen after taking testing in English.  She responded to my requests to show the psoriasis on her arms without waiting for translation.  She is now only 29 years old and has lived in the United States 10 years.

AR 17-18.

The Appeals Council declined review, making the ALJ's decision final.  AR 5-7.  Plaintiff timely requested judicial review.

II

In appealing the SSA's final decision, plaintiff contends the ALJ erred in discounting her own testimony and that of treating physician Dr Ta.  She also contends that the ALJ erred in failing to consider Listed Impairment 12.05 (mental retardation) in his analysis.  Finally, she contends that the ALJ failed to consider "all of the relevant evidence" in evaluating her RFC and, moreover, should have consulted a vocational expert to determine the availability of suitable employment, not the "grids," —— i e, the

9

medical-vocational guidelines set forth at 20 CFR Part 404, Subpart P, Appendix 2.  The court disagrees with these contentions.  On the contrary, the ALJ applied the SSA's regulations governing disability determinations correctly.  Because his conclusions are supported by substantial evidence and free of legal error, the court affirms his decision.

The court's jurisdiction is limited to determining whether the SSA's denial of benefits is supported by substantial evidence in the administrative record.  42 USC § 405(g).  A district court may overturn a decision to deny benefits only if the decision is not supported by substantial evidence or if the decision is based on legal error.  See <u>Andrews v Shalala</u>, 53 F3d 1035, 1039 (9th Cir 1995); <u>Magallanes v Bowen</u>, 881 F2d 747, 750 (9th Cir 1989).  The Ninth Circuit defines "substantial evidence" as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Andrews</u>, 53 F3d at 1039.

The SSA's regulations specify in detail how an ALJ is to approach the task of determining whether a claimant is disabled. 20 CFR § 416.920 sets forth a five-step sequential analysis for ALJs to use in evaluating claims of disability: (1) first, the ALJ considers whether the claimant is currently employed in substantial gainful activity; (2) if not, the second step asks whether the claimant has a severe impairment; (3) in step three, the ALJ determines whether the claimant has a condition which meets or equals any listed condition according to the criteria set forth in the Listings of Impairments in Appendix 1, Subpart P of Part 404; (4) if the claimant does not have such a condition, step four asks

whether the claimant can perform his past relevant work; (5) if not, in step five the ALJ considers whether the claimant has the ability to perform other work which exists in substantial numbers in the national economy.  20 CFR § 416.960(c).  The ALJ found at step two that plaintiff did have "severe" impairments —— specifically depression, psoriasis, asthma, allergic rhinitis and migraine headaches, but not back pain —— that significantly limited her ability to perform basic work activities, but found at step three that none of the severe impairments met or equaled the listing criteria that would establish plaintiff as disabled.

      The court notes that although there are frequent references in the record to plaintiff's asthma and psoriasis, plaintiff does not contend on appeal that she is disabled by either of these ailments.  The ALJ found that plaintiff's asthma did not meet the criteria for listing-level asthma, which include regular attacks requiring intensive treatment up to and including hospitalization.  See 20 CFR Part 404, Subpt P, App I, Listing 3.03.  Similarly, plaintiff does not actually contend on appeal that she is disabled by psoriasis.  Psoriasis is a listed impairment, but the listing criteria for skin lesions are as follows:

> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity, that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 CFR Pt 404, Subpt P, App 1, Listing 8.00, 8.05. Plaintiff does not contend that her psoriasis meets or equals the listing criteria for psoriasis. Rather, her complaints about psoriasis appear to be based upon cosmetic concerns. Yet the record of the hearing transcript suggests that the lesions were not visible on plaintiff's face and hands. This, therefore, leaves psychological impacts as the only possible basis upon which plaintiff's psoriasis could form the basis for disability. Plaintiff's depression is discussed in more detail below; first, the court will address plaintiff's challenges to the ALJ's weighing of evidence.

The regulations cover in detail how different types of evidence are to be weighed against each other. Several provisions are directly on point in this case. 20 CFR § 416.929(b), entitled "how we evaluate symptoms, including pain," effectively disposes of plaintiff's challenges to the ALJ's handling of her pain testimony:

> Your symptoms, such as pain * * * will not be found to affect your ability to do basic work activities unless medical signs or laboratory finding show what a medically determinable impairment(s) is present. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical [or] physiological * * * abnormalities and which would reasonably be expected to produce the pain or other symptoms alleged.

Substantial evidence in the record supports the ALJ's conclusion that the required medical signs and laboratory findings that would require him to give credence to plaintiff's pain testimony are absent. There is no medical evidence showing any specific work-up by treating physicians of plaintiff's headaches and alleged back pain. As noted above, the progress notes from plaintiff's many

12

visits to her treating physician indicate only sporadic episodes of "back strain" with no follow-up.  Plaintiff admitted taking pain medication for headaches no more than once a day and failing to follow through with a referral to a specialist for headache pain.  On this record, the ALJ was entitled to discount plaintiff's allegations of disabling pain.

20 CFR § 416.927(d), in the regulation entitled "evaluating opinion evidence," covers "how we weigh medical opinions."  It explains that the ALJ evaluates every medical opinion and generally gives more weight to treating sources.  A treating physician's opinion is given "controlling weight" only if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence" in the record.  If an ALJ does not give controlling weight to a treating source, he must consider other factors, including length of the treatment relationship and frequency of examination, nature and extent of the treatment relationship, supportability, consistency, specialization and other factors.  § 416.927(d)(2)-(6).  Regarding supportability, the regulation provides: "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."  § 416.927(d)(3).

Plaintiff challenges the ALJ's decision to discount the opinion of Dr Ta giving plaintiff a GAF score of 50, but Dr Ta's report was neither detailed nor carefully analyzed and was contrary to substantial other evidence in the record -- specifically, the much more thorough report of Dr Lewis-Weintrode.  The ALJ is

13

responsible for resolving conflicts in medical testimony and resolving ambiguity. <u>Morgan v Comm'r of Soc Sec Admin</u>, 169 F3d 595, 603 (9th Cir 1999). The ALJ stated that Dr Ta was a "general physician and surgeon" and not a trained mental health practitioner, which plaintiff contends, based on a Google search, is incorrect. Pl Mot (Doc # 17) at 13. But it is the social security claimant's burden to furnish to the agency evidence that he or she is disabled (see, e g, 20 CFR § 404.1512) and nothing in the record identifies Dr Ta's specialty. In any event, the alleged discrepancy is immaterial; the ALJ was entitled to give more weight to the more detailed, comprehensive report of the examining psychologist than to that of Dr Ta, which does not specifically address plaintiff's ability to work.

Returning to plaintiff's contentions regarding the ALJ's handling of her alleged mental impairments —— depression and mental retardation —— the court finds no error. To evaluate a claim of disability based on mental impairment, the regulations require the ALJ to employ a "special technique" at the administrative hearing level to assist in identifying the need for additional evidence, considering and evaluating the functional consequences of the mental disorder on the claimant's ability to work and organizing and presenting the facts. See 20 CFR § 404.1520a(b). The regulation provides:

> (b)(1) Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s). [] If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section. * * *

14

>     (c)(1) * * * We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment. * * *  (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. []  (4) When we rate the degree of limitation in the first of three functional areas [] we will use the following five-point scale:  None, mild, moderate, marked, and extreme.  When we rate the degree of limitation in the fourth functional area (episodes of decompensation) we will use the following four-point scale:  None, one or two, three, four or more.  The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.
>
>     (d) * * * After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s). * * *
>
>     (e) <u>Documenting application of the technique</u>. * * *  At the administrative law judge hearing and Appeals Council levels[], we will document application of the technique in the decision. * * * (2) At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique.  The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s).  The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 CFR § 404.1520a.  The ALJ's decision documents application of the special technique vis-a-vis depression to the evidence in plaintiff's case.  AR 15-16.  Plaintiff incorrectly contends that the ALJ was required to perform a similar analysis for mental retardation based on the outcome of her psychological testing even though Dr Lewis-Wintrode's report does not place plaintiff within

striking distance of meeting the listing criteria for that disorder. For example, Listing 12.05 requires for an individual with "a valid verbal, performance, or full scale IQ of 60 through 70" evidence of marked difficulties in "at least two" of the areas of activities of daily living, social functioning, maintaining concentration, persistence or pace or repeated episodes of decompensation. The ALJ found that plaintiff lacked such difficulties, whatever the cause, and was not required to repeat the analysis for Listing 12.05 based solely on the IQ score reported in the psychological evaluation.

Finally, plaintiff challenges the ALJ's decision to use the "grids," more formally known as the Medical-Vocational Guidelines at 20 CFR Part 404, Subpart P, Appendix 2, in lieu of consulting a vocational expert to determine her RFC. The grids are an administrative tool the SSA may rely on when considering claimants with substantially uniform levels of impairment and may be used when they "accurately and completely describe the claimant's abilities and limitations." Burkhart v Bowen, 856 F2d 1335, 1340 (9th Cir 1988). The regulations address directly the circumstances in which a vocational expert is employed to assist the SSA with a particular claim:

> If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used, or there is a similarly complex issue, we may use the services of a vocational expert or other specialist. We will decide whether to use a vocational expert or other specialist.

20 CFR § 404.1566(e). The Ninth Circuit has interpreted this regulation to provide that "the use of vocational experts is left

16

to the Commissioner's discretion," further stating that "[a]t the most, the Commissioner need use a vocational expert only if there is an absence of other reliable evidence of the claimant's ability to perform specific jobs."  74 F3d 967, 971 (9th Cir 1996).

The introduction to the regulations in question provides that the grids "may not be fully applicable" in cases in which, as here, an individual's limitations are not primarily exertional, but rather non-exertional (mental, sensory, postural or environmental). Social Security Ruling 85-15, which the ALJ cited in his decision, explains how the regulations and Medical-Vocational Guidelines can be used to make disability determinations when only non-exertional limitations are present —– clearly contemplating, therefore, that the grids can and should be used in many or most such cases.

It was not error, therefore, for the ALJ to determine by means of the grids that plaintiff possessed the RFC to perform a wide range of unskilled work —— that is, "jobs ordinarily involv[ing] dealing primarily with objects, rather than with data or people," AR 18, citing SSR 85-15, subject only to the non-exertional limitations of avoiding exposure to harsh environmental irritants and extensive interaction with the public.

The clerk is directed to enter judgment in favor of defendant and against plaintiff.  The clerk is further directed to close the file and terminate all pending motions.

IT IS SO ORDERED.

**VAUGHN R WALKER**
United States District Chief Judge